IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Hyland Software, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Palaxo Technologies, LLC, formerly known as CCI Technologies, LLC, <br><br> Defendant. | CASE NO.: <br><br> **COMPLAINT** |

NOW COMES Plaintiff Hyland Software, Inc. and, by and through its undersigned attorneys, hereby states for its Complaint against Defendant Palaxo Technologies, LLC, formerly known as CCI Technologies, LLC, the following:

**Parties**

1. Plaintiff Hyland Software, Inc. ("Hyland") is an Ohio corporation, formed in 1991 in Cuyahoga County, Ohio. Hyland's principal place of business is 28500 Clemens Road, Westlake, Ohio 44145. Hyland is an active corporation in good standing with the Ohio Secretary of State.

2. Upon information and belief, Defendant Palaxo Technologies, LLC, formerly known as CCI Technologies, LLC ("Palaxo") is a limited liability company organized under the laws Dubai, United Arab Emirates. Palaxo's principal place of business is SIT Tower, 21st Floor, Office 2104 and 2105, Dubai Silicon Oasis, United Arab Emirates.

**Jurisdiction and Venue**

3. Upon information and belief, Palaxo regularly conducts business in the United States through its employees and agents, including but not limited to entering into reseller agreements with U.S.-based software companies like Hyland and Microsoft.

4. Palaxo and Hyland entered into a Reseller Agreement, effective January 26, 2015 (including addendums and amendments thereto, the "Agreement"), which included an agreement that "Any legal action brought concerning this Agreement or any dispute hereunder, including but not limited to an action to enforce or challenge an arbitration aware, shall be brought only in the courts of the State of Ohio, in the County of Cuyahoga, or in the federal courts located in such state (and county). Both parties submit to venue and jurisdiction in these courts."

5. This Court has subject matter jurisdiction over Hyland's claims under 28 U.S.C. §§ 1331, 1332, 1338 and 1367. The Court has further subject matter jurisdiction over Hyland's declaratory judgment claim under 28 U.S.C. § 2201.

6. Because Palaxo deliberately entered into an Agreement with an Ohio company that unambiguously consented to exclusive jurisdiction and venue in Ohio and selected Ohio law as controlling the parties' disputes, and then breached that Agreement and intentionally infringed Hyland's trademarks, with the knowledge and intent that those actions would harm

Hyland in Ohio, this Court has personal jurisdiction over Palaxo under Ohio Revised Code 2307.382(a)(2)-(4) and (6) and/or Federal Rule of Civil Procedure 4(k) (Lanham Act claims).

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) or (3) and (c)(3) because Hyland's performance of the Agreement took place in this District, payment was due to Hyland in this District, goods and services bearing Hyland's ONBASE trademark are advertised and marketed from this District, Palaxo consented to jurisdiction and venue in this District, and Palaxo is not resident in the United States.

**Hyland and OnBase**

8. Hyland was established in 1991 in Westlake, Ohio, where the company still maintains its headquarters.

9. Hyland's first product was an enterprise content management (ECM) and process management software suite called OnBase.

10. Applications of the suite are used in healthcare, financial institutions, insurance, government, higher education and manufacturing.

11. OnBase is maintained, marketed, and sold by Hyland from its headquarters in Westlake, Ohio.

12. Hyland and its subsidiaries have entered into reseller agreements with companies worldwide. Those agreements allow regional partners to install and service OnBase on a non-exclusive basis for their local customer base, subject to standard license terms.

**Relationship with Palaxo**

13. On January 26, 2015, Hyland entered into an OnBase International Reseller Agreement with CCI Technologies, LLC, a company based in Dubai (the "Agreement").

14. Later in 2015, CCI Technologies, LLC changed its name to Palaxo Technologies, LLC.

15. The Agreement includes a provision requiring any dispute related to the Agreement to be filed in the courts located in Cuyahoga County, Ohio.

16. The Agreement specifies that the parties consent to jurisdiction and venue in the courts located in Cuyahoga County, Ohio.

17. The Agreement requires the application of Ohio law to any dispute related to the Agreement.

18. The jurisdiction, venue and choice of law provisions are essential to the Agreement.

19. Hyland would not have entered into the Agreement with Defendant absent the jurisdiction, venue and choice of law provisions because otherwise Hyland's reseller agreements would potentially be subject to a patchwork of legal schemes both throughout the United States and worldwide.

20. Following the parties' execution of the Agreement, the parties entered into a January 26, 2015 Addendum ("Addendum") that waived Section 10.12 of the Agreement, which requires an initial $25,000 Reseller Fee upon execution of the Agreement and a $10,000 Reseller Renewal Fee annually thereafter. The Addendum also allowed Palaxo to attend training courses for the next year at no cost and allowed Palaxo a registration for one year to Hyland's Premium Subscription service. Palaxo gave no consideration for the Addendum, other than its continued commitment to promoting, marketing, and supporting Hyland's OnBase software under the Agreement.

21. On June 11, 2015, the parties entered into a first Amendment to the Agreement ("First Amendment"). Among other things, the First Amendment allowed Palaxo to utilize Hyland's Secondary Support Services outside of the hours permitted in the Agreement without incurring increased fees therefor, expanded Palaxo's non-exclusive sales territory, and

allowed more of Palaxo's employees to attend training courses for the next year at no cost. Palaxo gave no consideration for the First Amendment, other than its continued commitment to promoting, marketing, and supporting Hyland's OnBase software under the Agreement.

22. On April 12, 2016, the parties entered into a second Amendment to the Agreement ("Second Amendment"). Among other things, the Second Amendment gave Palaxo another free year Premium Subscription allowing its employees access to courses and materials and allowed Palaxo to take, at no cost, up to ten courses. Palaxo gave no consideration for the Second Amendment, other than its continued commitment to promoting, marketing, and supporting Hyland's OnBase software under the Agreement.

23. On April 28, 2016, the parties entered into a third and final Amendment to the Agreement ("Third Amendment") that allowed Palaxo extended payment terms for the Software License Fees and Software Maintenance Agreement Fees that were due and payable to Hyland. Palaxo gave no consideration for the Third Amendment, other than its continued commitment to promoting, marketing, and supporting Hyland's OnBase software under the Agreement.

**Palaxo Failure to Employ Qualified Technicians**

24. Under the Agreement, Defendant was required to have certain services provided only through employees who had obtained and maintained the required certifications or qualifications from Hyland for the particular services in question.

25. Under the Agreement, Defendant was required to have and maintain at least two employees who were Certified OnBase Installers, at least one employee who was a Certified Workflow Engineer if it created any Workflow configuration for any customer, at least one employee who was a Certified WorkView Engineer if it created a WorkView configuration

for any customer, and at least one employee who was a Qualified API Technician if it created any API-based integration for any customer.

26. Defendant's employees were required to obtain their Certified OnBase Installer status within 90 days of the Effective Date of the Agreement.

27. While the Agreement required Defendant to be responsible for any and all costs associated with the training and ongoing education necessary to obtain the required certifications and qualifications, in a January 26, 2015 Addendum to the Agreement, Hyland granted Defendant free training courses, provided the training was completed within a year of the date of the Addendum.

28. Defendant's employees did not have the required certifications or qualifications as required under the Agreement within the time period provided in the Agreement.

29. In a June 11, 2015 Amendment to the Agreement, Hyland expanded the free training available to Defendant's employees provided the courses were completed within one year of the date of the Amendment.

30. In an April 12, 2016 Amendment to the Agreement, Hyland expanded even further the free training available to Defendant's employees, provided the courses were completed within one year of the date of the Amendment.

31. Two employees of Palaxo, Hasnat Ahmed and Naeem Asif, took the required courses to qualify as OnBase Installers and took other coursework related to becoming Certified Workflow Engineers and Qualified API Technicians.

32. One employee of Palaxo, Zagham Muhmood, took one introductory course, but canceled his remaining courses.

33. The value of the OnBase courses that Hyland provided free of charge to Palaxo's employees in an effort to support Palaxo's marketing efforts under the Agreement is $17,500.00.

34. Upon information and belief, Mr. Ahmed left Defendant's employ in or around November 2016. See Exhibit A, a true and correct copy of the LinkedIn profile for Hasnat Ahmed.

35. Upon information and belief, Mr. Asif left Defendant's employ in or around January 2017. See Exhibit B, a true and correct copy of the LinkedIn profile for Naeem Asif.

36. Upon information and belief, Mr. Muhmood left Palaxo's employ in or around June 2017. See Exhibit C, a true and correct copy of the LinkedIn profile for Zagham Muhmood

37. Palaxo's employees did not receive their OnBase Installer certifications until on or around May 2, 2016.

**Palaxo's Failure to Pay Uncontested Amounts Owed to Hyland**

38. In or around February 2016, Palaxo entered into a standard Software License Agreement and a standard Software Maintenance Agreement with Emirates Fast Food Company LLC that included installation and maintenance by Palaxo of Hyland's OnBase software and a sublicense to use the same, including WorkFlow modules requiring a Certified WorkFlow Engineer.

39. Pursuant to the Agreement, Hyland made a copy of OnBase software available for Palaxo's installation and sublicense to Emirates Fast Food Company LLC.

40. Pursuant to the Agreement Palaxo owed Hyland a Software License Fee and Software Maintenance Agreement Fee for Palaxo's installation and sublicense of OnBase software to Emirates Fast Food Company LLC.

41. On April 28, 2016, Hyland and Palaxo entered into an Amendment to the Agreement that allowed Defendant special extended payment terms for the Software License Fees and Software Maintenance Agreement Fees payable by Defendant to Hyland under the Agreement related to Emirates Fast Food Company LLC.

42. Under the April 28, 2016 Amendment, Defendant was obligated to pay Hyland $21,000 on or before September 30, 2016, $8,400 on or before September 30, 2016, and $21,000 on or before December 31, 2016.

43. Palaxo has never paid the amounts due to Hyland under the Agreement and the April 28, 2016 Amendment thereto.

44. On January 25, 2017, Hyland invoiced Palaxo $2,856.00 for additional Software License Fees due as a result of add-on licenses of the OnBase software to Emirates Fast Food Company, LLC and maintenance thereof through January 2018, with payment due ninety (90) days from invoice.

45. Palaxo has never paid the January 25, 2017 invoice.

46. Upon information and belief, Emirates Fast Food Company, LLC has paid all amounts invoiced to it by Palaxo related to the installation and licensing of Hyland's OnBase software.

47. Since becoming a Hyland reseller on January 26, 2015, Defendant has never paid any money to Hyland as required under the Agreement.

48. Under the Agreement, Hyland is entitled to a late payment charge on all amounts owed by Palaxo of 18% per annum or the highest lawful rate under Ohio law, whichever is higher.

**Palaxo's Breach of its Duty to Exercise its Best, or Even Reasonable, Effort**

49. Under the Agreement, Defendant was required to use its best efforts to promote and market Hyland's OnBase software.

50. The Agreement included a Minimum Annual Purchase Requirement of one hundred thousand U.S. dollars ($100,000) in Software License Fees payable to Hyland.

51. Defendant never met the Minimum Annual Purchase Requirement.

52. Palaxo was required to pay Hyland an annual renewal Software Maintenance Agreement Fee for any extended maintenance and technical support services for OnBase software it opted to provide to Emirates Fast Food LLC beyond the initial term of the standard Software Maintenance Agreement.

53. In Hyland's experience, including in the territories in which Defendant was authorized to operate, most licensees renew their Software Maintenance Agreements in order to have access to the primary support of local, certified OnBase technicians and the secondary support offered by Hyland.

54. Hyland's overall maintenance renewal rate for its OnBase software is 98%. See Exhibit D.

55. Palaxo has never paid Hyland any Software Maintenance Agreement Renewal Fee.

56. Emirates Fast Food LLC has informed Hyland that it does not currently have a maintenance agreement with any authorized OnBase maintenance provider, including Palaxo.

57. Upon information and belief, due to Palaxo's failure to employ qualified technicians, its failure to provide reasonable support to Emirates Fast Food LLC, and its failure to employ reasonable efforts to pursue the renewal opportunity with Emirates Fast Food LLC, Palaxo

failed to secure renewal of the Software Maintenance Agreement with Emirates Fast Food LLC.

58. If Palaxo had secured Emirates Fast Food LLC's renewal of the Software Maintenance Agreement, Hyland would have been entitled to an additional $16,541.67 under the Agreement.

59. Since 2015, Palaxo's lead generation has dramatically decreased from about 19 leads in 2015 and about 18 leads in 2016, to 0 leads in 2017.

60. Upon information and belief, Palaxo's inability to successfully license OnBase software to more than one customer out of nearly forty leads is due to Palaxo's sales, marketing, and/or technical incompetence and its breach of its duty to take reasonable efforts to market OnBase software.

61. Palaxo has identified no new leads since the Emirates Fast Food LLC account.

62. Palaxo's last open sales lead was identified by Palaxo as closed on October 11, 2017.

63. On September 26, 2017, a representative of Hyland met with Palaxo to discuss new business opportunities and the status of Palaxo's efforts with respect to OnBase.

64. During the September 2017 meeting, Palaxo stated that OnBase no longer fit with its business strategy, which currently is to build and sell its own enterprise software solutions.

65. During the September 2017 meeting, Palaxo informed Hyland that it had no new leads on potential business opportunities for OnBase and had dissolved its OnBase team of qualified OnBase installers and technicians.

### Hyland's Termination of Palaxo

66. Due to Palaxo's failure to pay Hyland any money owed under the Agreement, its failure to maintain qualified OnBase installers and technicians, and its statements to Hyland that it

no longer wished to market and support OnBase software, on October 23, 2017, Hyland provided notice to Palaxo in accordance with Section 7 of the Agreement that it was terminating the Agreement effective October 25, 2017 ("Termination Letter"). A true and correct copy of the Termination Letter is attached hereto as Exhibit E.

67. Although the Termination Letter indicated that it was pursuant to the non-renewal clause of the Agreement, Section 17.1, Hyland was authorized to terminate the Agreement under Section 17.2 of the Agreement, which provided that Hyland could terminate the Agreement upon written notice "if Hyland concludes that for any reason Reseller is or will become unable to discharge the obligations of Reseller hereunder."

68. Section 17.1 of the Agreement allows non-renewal of the Agreement by either party without cause provided the party gives notice of termination no less than ninety (90) days prior to the expiration of the current term, which in this case was January 26, 2018.

69. Palaxo never contacted Hyland regarding the discrepancy between the termination provision referred to in the Termination Letter and the termination period specified in the Termination Letter.

70. Palaxo allowed the ninety (90) day notice period under Section 17.1 of the Agreement to pass without any communication whatsoever to Hyland.

**Palaxo's Trademark Infringement**

71. The Agreement allowed Palaxo a limited license to use Hyland's ONBASE trademark during the pendency of the Agreement and in connection with the activities authorized under the Agreement.

72. In the Termination Letter, Hyland reminded Palaxo that it needed to cease use of the ONBASE trademark immediately upon termination.

73. Palaxo continues to market itself, at https://www.palaxo.com/circularotm-platform-certified-hyland-standard-onbase-ecm-archiving/, as an "OnBase partner" and states that it can "offer the fully integrated end-to-end solution and support to its customers," when it is no longer a "partner" of Hyland and has no employees qualified to support OnBase. See also https://www.circularo.com/news/new-version-circularo-ecorrespondence-platform-presented-onbase-partner-summit-dubai/ (contains link to Hyland's OnBase website). A true and correct copy of these advertisements are attached hereto as Exhibits F and G, respectively.

74. Palaxo's continued use of Hyland's ONBASE trademark is not authorized by Hyland and infringes Hyland's rights in and to its longstanding trademark.

75. Upon information and belief, Palaxo targets advertisements for its products and services to companies in the European Union and United Arab Emirates.

76. Hyland owns and has registered the trademark ONBASE throughout the world, including but not limited to in the United States of America, the European Union, and the United Arab Emirates.

77. Hyland owns U.S. Reg. No. 1902494 for ONBASE in International Class 009 for "Computer software for electronic document imaging, and storage, retrieval and management of the information contained thereon." The registration, a true and correct copy of which is attached hereto as Exhibit H, is valid, in use, and enforceable.

78. Hyland owns U.S. Reg. No. 3010345 for ONBASE in International Class 042 for "Design and development of computer software, consultation services in the fields of selection, implementation and use of computer software systems for others; customization of computer hardware and software for others; installation, repair, maintenance of computer software; technical support services, namely troubleshooting of computer hardware and

software problems." The registration, a true and correct copy of which is attached hereto as Exhibit I, is valid, in use, and enforceable.

79. Hyland owns UAE Reg. No. 174681 for ONBASE in International Class 042 in connection with "Design and development of computer software, consultation services in the fields of selection, implementation and use of computer hardware and software systems for others; customization of software for others; installation, repair, maintenance of computer software; technical support services, namely troubleshooting of computer hardware and software problems." The registration is valid, in use, and enforceable.

80. Hyland owns UAE Reg. No. 174678 for ONBASE in International Class 009 for "Computer software for enterprise content management." The registration is valid, in use, and enforceable.

81. Hyland owns CTM Reg. No. 4003265 for ONBASE in International Class 009 for "Computer software for electronic document imaging and storage, retrieval and management of the information contained thereon;" in International Class 037 for "Installation, repair and maintenance of computer hardware;" and in International Class 042 for "Design and development of computer software; consultation services in the fields of selection, implementation and use of computer hardware and software systems for others; installation, repair and maintenance of computer software; technical support services, namely troubleshooting of computer hardware and software problems." The registration is valid, in use, and enforceable.

82. Hyland has authorized use of its ONBASE trademark by Resellers located in the same territories as Palaxo.

83. Palaxo's unauthorized use of Hyland's ONBASE trademark violates the Agreement and is likely to cause confusion amongst potential customers who mistakenly believe that there continues to be an association between Palaxo and Hyland or that Palaxo is otherwise authorized to use the ONBASE trademark and/or offer goods and services under the mark.

84. Upon information and belief, consumers who are initially drawn to Palaxo as a result of Palaxo's false association with Hyland and/or ONBASE are encouraged by Palaxo to purchase an alternate software solution.

85. Upon information and belief, Palaxo's unauthorized use of Hyland's ONBASE trademark has a substantial effect on United States commerce because Palaxo's exploitation of consumers' initial interest confusion diverts significant license fees that Hyland would otherwise be entitled to receive.

**Palaxo's Threat to File a Baseless Lawsuit**

86. On or around March 12, 2018, Palaxo's legal representative sent a "Legal Notice" to Hyland, claiming that Hyland was not entitled to terminate the Agreement and demanding a "written proposal" by "Thursday, 25 March 2018." A true and correct copy of the letter received from Palaxo is attached hereto as Exhibit J.

87. Based on Palaxo's letter and Hyland's experience with a recently acquired business, Hyland reasonably believes that Palaxo's threats include the threat to file a lawsuit against Hyland based on the Agreement in the courts of the United Arab Emirates in violation of the Agreement.

## COUNT I

### Breach of Contract

88. Hyland reasserts and realleges all of the allegations contained in the preceding paragraphs as if fully set forth herein.

89. Hyland has performed all of its obligations to Palaxo under the Agreement.

90. Palaxo has breached the Agreement by, among other things: (1) failing to employ and maintain the qualified installers and technicians required under the Agreement; (2) failing to pay monies due to Hyland under the Agreement, (3) failure to exercise its best efforts, or even reasonably efforts, to promote and market Hyland's OnBase software; and (4) failure to cease representing itself as a partner of Hyland following termination of the Agreement.

91. Palaxo has anticipatorily breached the Agreement by, among other things, threatening to file a lawsuit against Hyland based on the Agreement in the courts of the United Arab Emirates.

92. Palaxo's breach and anticipated breach of the Agreement have caused and will cause Hyland actual damages in excess of $75,000.

93. Palaxo, if not enjoined by the Court, will continue its breach of the Agreement causing Hyland immediate and irreparable harm, damage, and injury.

## COUNT II

### Declaratory Judgment of No Breach by Hyland

94. Hyland reasserts and realleges all of the allegations contained in the preceding paragraphs as if fully set forth herein.

95. Hyland has performed all of its obligations to Palaxo under the Agreement.

96. By claiming that Hyland improperly terminated the Agreement and threatening millions of dollars in alleged damages thereby to Palaxo, Palaxo has caused uncertainty regarding Hyland's legal rights under the Agreement.

97. Without a declaration by this Court that Hyland has not breached the Agreement, the parties' respective legal rights under the Agreement will be uncertain, casting a shadow on their future business endeavors.

## COUNT III

### Trademark Infringement by Palaxo

98. Hyland reasserts and realleges all of the allegations contained in the preceding paragraphs as if fully set forth herein.

99. This claim arises under the Lanham Act, particularly under 15 U.S.C. § 1114 and/or 15 U.S.C. § 1125.

100. Hyland's ONBASE mark is inherently distinctive.

101. Hyland's use of its ONBASE mark throughout the United States and abroad in connection with computer software and services related thereto has been continuous and substantially exclusive.

102. Hyland's services and goods offered under its ONBASE mark are well-known worldwide, including but not limited to in the United States, Europe, and the Middle East, to companies in the healthcare, banking, insurance, government, higher education, and manufacturing industries that use enterprise content management (ECM) and process management software to conduct their daily business.

103. The relevant purchasing public generally associates and identifies the ONBASE mark with Hyland.

104.	Palaxo's continued use of Hyland's ONBASE trademark constitutes trademark infringement and tends to false represent that there is a continuing association or affiliation between Palaxo and Hyland that no longer exists.

105.	As a former licensee of Hyland's ONBASE trademark, Palaxo must make reasonable efforts to avoid confusing the public regarding its relationship with Hyland.

106.	Palaxo's conduct is likely to confuse, mislead, and deceive Palaxo's customers, purchasers, and members of the public as to Palaxo's association or affiliation with Hyland and/or that Palaxo's services have been sponsored, approved, authorized, or licensed by Hyland, all in violation of 15 U.S.C. § 1114 and/or 15 U.S.C. § 1125.

107.	Palaxo's conduct has a substantial effect on U.S. commerce because Hyland markets and sells OnBase software and related services through authorized affiliates and licensees operating in the same territories as Palaxo, and Hyland's income in the United States is lessened when companies do not purchase authorized OnBase software and related services due to confusion, including initial interest confusion, caused by Palaxo's continued use of Hyland's ONBASE mark.

108.	There is no conflict between any foreign laws and enforcement of Hyland's rights under the Lanham Act in this case because Hyland owns valid registrations of the ONBASE trademark in the territories where Palaxo offers its goods and services. Palaxo will, if not enjoined by the Court, continue its acts of trademark infringement, thereby deceiving the public and causing Hyland immediate and irreparable harm, damage, and injury.

## COUNT IV

### Unjust Enrichment

109. Hyland reasserts and realleges all of the allegations contained in the preceding paragraphs as if fully set forth herein.

110. Following execution of the initial Agreement, Hyland provided additional benefits to Palaxo under the Agreement, including waiving the initial Reseller Fee and subsequent Renewal Reseller Fees, providing free training and access to courses and materials, and allowing Palaxo extended payment terms, based on Palaxo's representations that it was fully committed to exercising its best efforts to promote and market Hyland's OnBase software and that it would achieve a Minimum Annual Purchase Requirement of one hundred thousand U.S. dollars ($100,000) in Software License Fees payable to Hyland.

111. Palaxo knew that it was receiving additional benefits that Hyland would not otherwise grant absent Palaxo's commitment to promoting and marketing Hyland's OnBase software and achieving a Minimum Annual Purchase Requirement.

112. As a result of Palaxo's breach, it has been unjustly enriched by the training, payment terms, and other benefits provided by Hyland.

113. Under the circumstances, it would be unjust for Palaxo to retain any benefit received from Hyland

### PRAYER FOR RELIEF

Wherefore, Plaintiff, Hyland Software, Inc. respectfully requests that this Court grant the following relief:

    A. A declaration that Palaxo has materially breached the Agreement;

B. A declaration that Hyland did not materially breach the Agreement;

C. A declaration that the Agreement is terminated;

D. An award of Hyland's damages resulting from Palaxo's breach of the Agreement in an amount to be proven at trial;

E. A declaration that Palaxo is violating Hyland's rights in and to its ONBASE trademark under the Lanham Act;

F. A permanent injunction prohibiting Palaxo and all those acting in concert with it from using the trademark ONBASE, and any other trademark confusingly similar to Hyland's ONBASE trademark in connection with the sale, offering for sale, or distribution of goods or services related to computer software;

G. An award of three times Hyland's damages, disgorgement of Palaxo's profits attributable to its infringement, and costs of this action in accordance with the provisions of 15 U.S.C. §1117;

H. Repayment by Palaxo of the benefits it received from Hyland, in an amount to be proven at trial;

I. That the Court declare this an exceptional case and that Palaxo be required to pay Hyland its reasonable attorneys' fees incurred in this action, in accordance with the provisions of 15 U.S.C. §1117;

J. That Palaxo be required to pay Hyland's costs and disbursements of this action; and

K. Grant Hyland any such relief as this Court deems just and equitable.

**JURY DEMAND**

Hyland Software, Inc. hereby demands a jury trial on all issues so triable.


Dated: April 17, 2018							Respectfully submitted,


								*/s/ Christina J. Moser*
								Christina J. Moser (0074817)
								Email:   cmoser@bakerlaw.com
								BAKER & HOSTETLER LLP
								Key Tower
								127 Public Square, Suite 2000
								Cleveland, OH  44114-1214
								Telephone:   216.621.0200
								Facsimile:   216.696.0740

								Attorneys for Hyland Software, Inc.